```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
SECURED PARTY CHARLES HECKER,
                                :
            Plaintiff,              REPORT & RECOMMENDATION
                                :
         -against-                  07 Civ. 115 (GBD)(MHD)
                                :
DWAYNE MONTGOMERY,
                                :
            Defendant.
-------------------------------x
```

TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

Pro se plaintiff Charles Hecker commenced this lawsuit, apparently under 42 U.S.C. § 1983, complaining about his 2006 arrest for peddling without a license and several other violations. Although he originally suggested that the arresting officers had used excessive force, he has since waived any claim for personal injury and on that basis avoided having to disclose his medical records during discovery. In his complaint, which is fairly obscurely worded, he names only one defendant, Dwayne Montgomery, who is the Deputy Inspector of the 28th Precinct in Manhattan. As for relief, plaintiff seeks only an award of damages.

At the conclusion of discovery, defendant has moved for summary judgment, which plaintiff opposes. Prior to the end of the discovery period, in June 2007, plaintiff also moved for summary judgment, and that motion too is pending before us.

1

A. The Evidentiary Record

The pertinent facts are not in meaningful dispute. Plaintiff has been engaged for three or four years in selling CDs on the sidewalk along 125th Street in Manhattan. (Pl. Dep. 40-41). He has periodically been approached by law enforcement personnel asking him whether he has a vendor's license, and he twice received summonses because he did not have one. (Id. 61-64).

On November 26, 2006 he was standing on the sidewalk selling CDs of his own music. At the same time he had a large speaker, a CD player and a hand truck, and was playing music that was broadcast through the speaker to attract customers as well as, in plaintiff's view, to "give Jesus the glory for the day" and "to spread the word." (Id. at 57, 73, 78-79, 81-83). Two police officers witnessed his sale of CDs and his playing of music, and one of them then approached him and asked for his license and for identification. (Id. at 89-94). Plaintiff initially responded by telling the officer that he "did not want to do any business with him[,]" and then provided what he described as an "American National ID Card." (Id. at 92-97). According to plaintiff, one of the officers began writing him a summons. (Pl. Dep. 99). Plaintiff then began writing down the officer's badge number, and the officer said, in substance, "'You're going to be a smart ass, we're going to take

2

you through the system now.'" (Id.). The officers then sought to arrest him, and he initially resisted by crossing his arms over his chest, although the officers eventually subdued him. (Id. at 106-11).

The police charged plaintiff with peddling without a license, in violation of N.Y. Gen. Bus. Law § 34; failure to have a certificate of authority to collect sales tax, in violation of N.Y. Tax Law §§ 1817(d) & 1134; and resisting arrest, in violation of N.Y. Penal Law § 205.30. (See Declaration of Ass't Corp. Counsel Sumit Sud, executed January 18, 2008 ("Sud Decl."), Ex. H). He was transported to the 28th Precinct and remained in custody for approximately 17 hours. (Pl. Dep. at 126-27). At the end of that time he was informed that the District Attorney was declining to prosecute, and he was released. (Id. at 126-27).

The District Attorney did in fact decline to prosecute plaintiff on November 27, 2006. (Sud Decl. Ex. I). As a result, plaintiff's property, which had been seized at the time of his arrest, was returned to him in undamaged condition, with the exception of a small antique knife he had been carrying in his pocket. (Id. Ex. M; Pl. Dep. at 79-80, 160-61).

Defendant Montgomery serves in a supervisory capacity at the 28th Precinct. (Sud Decl. Ex. J, ¶ 2). He was not present at plaintiff's arrest and had no involvement in that arrest or the seizure of plaintiff's property. (Pl. Dep. 119-20, 131, 156-57, 163-64). Indeed, plaintiff has never spoken to or otherwise interacted with Inspector Montgomery. (Id. at 155). It appears that he chose to sue defendant on the basis of an internet search that led him to discover that Inspector Montgomery held a senior position at the 28th Precinct. (Id. at 150-51). He testified that after this discovery he sent Inspector Montgomery a number of "Affidavit[s] of Intent", stating that he held defendant responsible for the actions of the arresting officers. (Id. at 50-54; Sud Aff. Ex. K).

B. <u>Defendant's Motion</u>

Inspector Montgomery has moved for summary judgment on a variety of grounds. Principally, he argues that plaintiff's claims against him must fail because he had no involvement in the arrest of plaintiff and the seizure of his property. He also asserts that the arrest was based on probable cause and hence not illegal, and that the seizure of property was permissible and in any event was followed by its return. He further invokes, as an alternative ground, a qualified immunity defense. Finally, he argues that the

4

complaint should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

   C. <u>Plaintiff's Motion</u>

In the midst of discovery, plaintiff filed a motion styled as one for summary judgment. The best that we can say about it is that it is fairly incoherent and offers no evidence pertinent to any cognizable claim against the defendant. Despite its repeated references to contracts and plaintiff's desire not to enter into one with the police and his mention of the "UCC", the point that we can discern is that plaintiff views himself as not subject to the laws of the community and believes that unless he entered into a contract with the police, they had no authority to make any demands on him. (<u>See</u> "Dispositive Motion" at ¶¶ 1–5, 7; <u>see</u> <u>also</u> Pl. Dep. at 99-106).

Plaintiff's later response to defendant's summary-judgment motion is quite similar. In addition, he again seems to ask that summary judgment be awarded in his favor, albeit without citing or proffering any evidence that would tend to establish his claims.

ANALYSIS

The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). It is axiomatic that the role of the court on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000). In this case the material facts are undisputed and dictate the entry of summary judgment for defendant.

A. Lack of Allegations of Personal Involvement of Defendant

If a plaintiff seeks to impose damage liability on a government employee under section 1983, he cannot rely on the principle of respondeat superior. See, e.g., Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)(citing cases); Al-Jundi v. Estate of

Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989). Rather, the plaintiff must plead and prove that the defendant had some direct involvement in, or responsibility for, the misconduct. See Hendricks v. Coughlin, 114 F.3d 390, 394 (2d Cir. 1997). A supervisory official may be held legally responsible for a constitutional violation if he: (1) directly participated in the infraction or ordered that the action be taken; (2) failed to remedy a wrong after learning of the violation; (3) created or allowed the policy or custom under which the incident occurred; (4) was grossly negligent in managing subordinates who caused the incident; or (5) exhibited deliberate indifference to the rights of the plaintiff or others in a similar position by failing to act on information indicating that unconstitutional acts were occurring. See, e.g., Iqbal v. Hasty, 490 F.3d 143, 152-53 (2d Cir. 2007); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986). Plaintiff fails to demonstrate any personal responsibility by Inspector Montgomery for the actions of the arresting officers.

As noted, defendant had no involvement in the plaintiff's arrest or the temporary detention of his property. Moreover, there is no evidence that he had any responsibility for any Department policy or practice (assuming there were one) that might even arguably have contributed to the alleged violation of plaintiff's

7

constitutional rights. Although plaintiff, subsequent to his release from custody, apparently sent Inspector Montgomery several documents deeming him liable for plaintiff's arrest and purporting to demonstrate that plaintiff was not subject to the authority of the law or local police, that unilateral act by him cannot form a basis for liability of the Inspector for prior acts by the police. In sum, the record is devoid of any legal basis on which to hold defendant liable for the conduct of the officers who arrested plaintiff.

B. Legality of the Arrest

Defendant's principal alternative argument is that summary judgment should be awarded in his favor because the police officers had probable cause to arrest plaintiff. Because plaintiff cannot demonstrate any involvement by defendant in the alleged wrongful conduct, summary judgment is appropriate irrespective of whether the arresting officers or anyone else violated plaintiff's constitutional rights. Nonetheless, in view of plaintiff's pro se status and the fact that he testified that he has previously been served with summonses for selling his CDs without a peddler's license, we take note of a potential question about the legality of

8

the arrest.[1]

A section 1983 claim for false arrest is based on an individual's Fourth Amendment right to be free from unreasonable searches and seizures. See, e.g., Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006). In analyzing federal claims for false arrest, courts "have generally looked to the law of the state in which the arrest occurred." Id. (quoting Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004)). Under New York law, for a plaintiff to prevail on a false-arrest claim, he must demonstrate that the defendant intentionally confined him, that the plaintiff was aware of being confined, that he did not consent to the confinement, and that the confinement was not justified or otherwise privileged. See, e.g., Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)); Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). The existence of probable cause for the arrest would justify the arrest, and thus is an absolute defense to a false-arrest claim under both federal and state law. See, e.g., Jaegly, 439 F.3d at 152; Savino, 331 F.3d at 76; Weyant, 101 F.3d at 852. Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts

---

[1] We note that the issue that we raise here was not addressed by defendant's counsel.

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly, 439 F.3d at 152 (quoting Weyant, 101 F.3d at 852); see also Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979).

1. Violation of N.Y. Gen. Bus. Law § 34

Section 34 of the General Business Law provides that "[a]ny citizen may arrest any person trading as a peddler who neglects or refuses to produce his license on demand" and bring him before a justice of the peace. N.Y. Gen. Bus. L. § 34. It further provides that "if the fact that the person so arrested has traded without a license be proved to the satisfaction of the justice, he shall convict such person of an offense against this article[.]" Id. This regulation allows the enforcement of legal requirements for procurement of a license under state law and municipal law. See N.Y. Gen. Bus. L. § 35 ("This article shall not affect the application of any ordinance...of a municipal corporation relating to hawkers and peddlers within the limits of such corporations, but the provisions of this article are to be complied with in addition to the requirements of any such ordinance[.]"). Selling goods on a New York City street triggers New York City's licensing requirement, which is embodied in N.Y.C. Admin. Code § 20-453. See,

e.g., People v. Saul, 3 Misc.3d 260, 261-62, 776 N.Y.S.2d 189, 190-91 (Crim. Ct. N.Y. Cty.); People v. Miller, 150 Misc.2d 614, 615-17, 569 N.Y.S.2d 1005, 1006-07 (Crim. Ct. N.Y. Cty. 1991).

Plaintiff admits that he was selling CDs when approached by the police and that he failed to produce a license when asked to do so by a police officer. Thus, upon first glance, there appears to have been probable cause for plaintiff's arrest pursuant to N.Y. Gen. Bus. Law § 34. However, because plaintiff was selling his own music and stated in his deposition that his primary purpose was to "spread the word" (See Pl. Dep. at 82-83 ("My intention was if people could hear the word of Jesus and give Jesus the glory for the day[.]")), we infer that his dominant purpose was expressive rather than commercial. Because there is a substantial body of law addressing the constitutionality of various applications of New York City's licensing law, N.Y.C. Admin. Code § 20-453, and lack of compliance with that local law would be the grounds for arrest under N.Y. Gen. Bus. Law § 34,[2] there is at least a possibility

---

[2]Although plaintiff was arrested for violating N.Y. Gen. Bus. Law § 34, since he never served in the military (Pl. Dep. 180), he would not have been eligible for a veteran's license. N.Y. Gen. Bus. Law § 32 (stating that every veteran of the armed forces of the United States can obtain a vendor's license from any county clerk upon presentation of his or her certificate of honorable discharge and completion of the requisite form). Since Article 4 of the General Business Law does not contain a parallel provision for the licensing of non-veteran vendors, and section 34 provides for the arrest and conviction of "any person

11

that a court could deem plaintiff's arrest to have violated his constitutional rights. See People v. Bery, 97 F.3d 689, 698-99 (2d Cir. 1996) (granting a preliminary injunction prohibiting enforcement of section 20-453 against vendors of artwork); Baker v. Peddler's Task Force, 1996 U.S. Dist. LEXIS 19140 at *2 (S.D.N.Y. Dec. 30, 1996) (finding that Bery had overruled Turley v. New York City Police Dep't, 1996 WL 93726 (S.D.N.Y. Mar. 5, 1996), a decision that had upheld the enforcement of § 20-453 against a street musician selling tapes of his own music); People v. Chen Lee, 2008 WL 795756 (Crim. Ct. N.Y. Cty. Mar. 26, 2008) (holding that sale of small tiles bearing photographic images was constitutionally protected); People v. Fucile, N.Y.L.J. May 13, 2004 at 19, Col. 1 (Crim. Ct. N.Y. Cty.) (finding that the arrest of an independent filmmaker exhibiting and selling his work in Union Square Park without a license violated the First Amendment and the Equal Protection Clause); People v. Bissinger, 163 Misc.2d 667, 675-76, 625 N.Y.S. 823, 827 (Crim. Ct. N.Y. Cty. Oct. 24, 1994) (finding section 20-453 unconstitutional as applied to plaintiff street photographer because the street itself was integral to his art and no alternative channels of communication

---

trading as a peddler" without a license, N.Y. Gen. Bus. L. § 34 (emphasis added), we read section 34 as an enforcement mechanism for local licensing laws. Thus, we conclude that the constitutionality of New York City's licensing law as applied to plaintiff would be the dispositive issue for a court adjudicating the legality of Mr. Hecker's arrest.

were available to him). Thus, in declining to rest our award of summary judgment on a determination that plaintiff's false-arrest claim would be futile even if the arresting officers were joined as defendants, we briefly discuss the potential constitutional issues that would need to be addressed by a court making such a determination.

Section 20-453, New York City's licensing law, requires all non-food vendors to obtain licenses from the New York City Department of Consumer Affairs. In 1982, the New York City Council amended section 20-453 by enacting Local Law 33, which exempted vendors of newspapers, books, and other written matter from the licensing requirement in order to harmonize the requirement with the First Amendment. Bery, 97 F.3d at 692.

In 1996, a lawsuit filed by artists claimed that their arrests under section 20-453 for selling their artwork on the streets violated the First Amendment. That suit resulted in the granting of a preliminary injunction prohibiting the enforcement of section 20-453 against vendors of artwork. Bery, 97 F.3d at 698-99. New York City subsequently consented to a permanent injunction prohibiting the enforcement of its licensing requirement against "any person who hawks, peddles, sells, leases or offers to sell or lease, at retail, any paintings, photographs, prints and/or sculpture...in a

13

public space[.]" Permanent Injunction on Consent dated Oct. 21, 1997, Bery v. City of New York, 94 Civ. 4253 (MGC) (S.D.N.Y. Oct. 30, 1997).

In 2006, the Second Circuit revisited the constitutional issues raised in Bery. Mastrovincenzo v. City of New York, 435 F.3d 78, 81-82, 103-105 (2006). The circuit court ultimately determined that the arrests of two vendors of hand-painted clothing items were neither unconstitutional nor violations of the Bery injunction. Id. Holding that section 20-453 is a content-neutral time, place, and manner regulation, the Court applied intermediate scrutiny to the application of that law to the plaintiffs, and concluded that their arrest was not unconstitutional. Id. at 100-02. In the course of holding that section 20-453 was constitutional as applied to the plaintiffs, the Mastrovincenzo court found that the licensing requirement serves the significant government interests of reducing sidewalk and street congestion. Mastrovincenzo, 435 F.3d at 100. However, the court specified that although it found section 20-453 to be narrowly-tailored in its application to the plaintiffs, whom it described as "vendors of regular merchandize with sufficient expresive content to qualify for First Amendment protection[,]" Id. at 102, its holding was not dispositive of the question of whether section 20-453 could be constitutionally applied to the

14

"traditional art forms at issue in Bery."[3] Id..

Since music is a form of expression entitled to First Amendment protection, Ward v. Rock Against Racism, 491 U.S. 781, 790 (1989), and plaintiff's dominant purpose in selling CDs of his music was arguably expressive rather than commercial, a court adjudicating the constitutionality of plaintiff's arrest under Mastrovincenzo would have to determine whether section 20-453 was constitutional as applied to plaintiff. Given the clear basis for disposing of plaintiff's claim on an alternative ground, as well as plaintiff's pro se status, the lack of briefing on the constitutional issues involved in Hecker's arrest, and the uncertainty of whether Mastrovincenzo could be distinguished in this case, we decline to recommend summary judgment in the defendant's favor on the basis of his probable-cause argument addressed to the peddler's-license charge.

2. Violation of N.Y. Tax Law § 1817(d)

---

[3]The court noted that the record in that case showed that both plaintiffs had ample alternative means of communication –- plaintiff Christopher Mastrovincenzo had opportunities to sell his work at galleries and trade shows, and plaintiff Kevin Santos had exhibited his work in a number of New York City galleries as well as in other venues. Mastrovincenzo, 435 F.3d at 101-02.

New York Tax Law § 1817(d) provides in relevant part:

> Any person required to obtain a certificate of authority under §1134 of this chapter who, without possessing a valid certificate of authority, willfully (1) sells tangible personal property or services subject to tax... and any person who fails to surrender a certificate of authority as required by such article is guilty of a misdemeanor.

N.Y. Tax L. § 1817(d). Plaintiff, as a seller of tangible personal property, see N.Y. Tax L. § 1101(6), was required by law to obtain a certificate of authority to collect sales tax. N.Y. Tax. L. §§ 1105(a), 1134(a)(1)-(2). Although he admits that he did not have such a certificate on the date of his arrest (Pl. Dep. 183), there is no evidence in the record that the arresting officers asked him to produce a certificate of authority before they arrested him. Thus, although plaintiff was in fact guilty of violating N.Y. Tax L. § 1817(d) in that he admittedly sold tangible personal property in the State of New York without having first obtained a certificate of authority to collect sales tax, the officers who arrested him did not have "knowledge or reasonably trustworthy information of facts and circumstances that [were] sufficient to warrant a person of reasonable caution in the belief" that Mr. Hecker had violated § 1817(d). Jaegly, 439 F.3d at 152 (quoting Weyant, 101 F.3d at 852); see also Dunaway, 442 U.S. at 208 n.9.

    3. Resisting-Arrest Charge

Plaintiff was also charged with resisting arrest. A person resists arrest when "he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." N.Y. Penal Law § 205.30; see, e.g., People v. Stevenson, 31 N.Y.2d 108, 111-13, 335 N.Y.S.2d 52, 56-57 (1972). If the initial attempt to arrest was improper -- that is, not "authorized" -- the person cannot be charged with resisting the arrest. See, e.g., Curry v. City of Syracuse, 316 F.3d 324, 336 (2003); Stevenson, 31 N.Y.2d at 111, 335 N.Y.S.2d at 56. Plaintiff concedes his resistance to the efforts of the police to arrest him, but argues that the initial basis for his arrest was improper. Since the legality of the resisting-arrest charge turns on whether arresting him for violating N.Y. Gen. Bus. Law § 34 was constitutional, an issue that we decline to decide, we refrain from drawing a conclusion as to the propriety of the resisting-arrest charge.

## CONCLUSION

For the reasons stated, we recommend that defendant's motion for summary judgment be granted.[4] By parity of reasoning, we recommend that plaintiff's motion for summary judgment be denied.

---

[4] In view of this conclusion, we need not address the alternative grounds on which defendant seeks dismissal of the complaint.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Gerard E. Lynch, Room 910, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Dated: New York, New York
April 28, 2008

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been mailed today to:

Mr. Charles Hecker
1919 Madison Avenue
Apt. 425
New York, New York 10035

Sumit Sud, Esq.
Assistant Corporation Counsel
   for the City of New York
100 Church Street
New York, New York 10007